CHARLES RAY CONSIDINE AND THALIA KELLY CONSIDINE, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5508–74.    Filed August 4, 1980.

---

*William Lee McLane* and *Nola McLane,* for the petitioners.
*H. Steven New* and *Kevin M. Bagley,* for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioners' income tax for 1970 in the amount of $27,166. In making this determination, respondent concurrently disallowed petitioners' claim for refund for 1970 in the amount of $3,685.

Due to concessions by both parties,[1] the only issue for our decision is whether petitioners are entitled to any charitable contribution deduction for the payment in 1970 of $20,000 to Tabor Academy.[2]

## FINDINGS OF FACT

Some of the facts were stipulated and they are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference.

Petitioners Charles Ray Considine and Thalia Kelly Considine (hereinafter petitioners or Charles and Thalia), are husband and wife, and they resided in San Diego, Calif., at the time of the filing of the petition herein. They filed a joint Federal income tax return for the taxable year 1970 with the Director, Internal Revenue Service Center, Ogden, Utah.

The facts relevant to an understanding of this case fall generally into two categories: (1) Those pertaining to a charitable contribution deduction taken by petitioners on their 1966 joint Federal income tax return; and (2) those pertaining to the charitable contribution deduction taken by petitioners on their 1970 joint Federal income tax return for the $20,000 payment to Tabor Academy, the disallowance of which deduction by respondent is specifically at issue herein. Accordingly, the facts will be so separated for purposes of convenience.

---

[1] Petitioners have conceded that they are not entitled to the charitable contribution deduction carryovers which formed the basis for the claim for refund. A technical adjustment to the medical expense deduction depends upon our resolution of the issue herein.

[2] Also included in the opinion portion is a discussion of the reasons why this Court, by order dated May 25, 1979, denied petitioners' "Motion to Exclude or Prohibit Testimony and Documentary Evidence."

### 1966 Charitable Contribution Deduction

In 1965, petitioners were the owners of real property known as the San Felipe property. During that year, petitioners transferred the San Felipe property to Capri Builders, Inc., for $250,000 ($500 per acre for 500 acres). The grant deed conveying the land was dated January 19, 1965, and it was recorded on March 9, 1965. Petitioners received no downpayment for the transfer of the San Felipe property; instead, they received a note in the amount of $250,000 secured by a trust deed on the property, both of which were dated January 19, 1965. The trust deed was recorded on March 9, 1965. In 1966, after it was determined that the San Felipe property contained 450 acres rather than 500 acres, the total price and note in payment thereof were reduced from $250,000 to $225,000.

On their joint Federal income tax return for 1966, petitioners claimed as a charitable contribution to Tabor Academy (hereinafter referred to as Tabor), a boy's college preparatory school in New England, the amount of $23,809.52. Because of the percentage limitation on deductions for charitable contributions, petitioners' deduction for 1966 for contributions to Tabor was limited to $20,781.31. The remaining $3,028.21 was carried forward to 1967 and claimed as a deduction for that year.

The $23,809.52 deduction for contributions to Tabor in 1966 was based on a claim by petitioners that they transferred to Tabor in 1966 two separate $1/21$ interests in the note and deed of trust received upon the sale of the San Felipe property to Capri Builders, Inc. Two $1/21$ of $250,000 equals $23,809.52.[3]

A quitclaim deed, dated October 25, 1966, and recorded November 18, 1966, from petitioners to Tabor quitclaiming a single undivided $1/21$ interest in the San Felipe property was received by Tabor in November-December 1966. This quitclaim deed constituted one-half of the claimed charitable contribution in 1966 to Tabor of two $1/21$ interests in the note and deed of trust received in 1965 from Capri Builders, Inc.[4] There is no

---

[3]Petitioners made no adjustment to the amount of the claimed contribution to Tabor in order to reflect the reduction from $250,000 to $225,000 of the note received from Capri Builders, Inc.

[4]Petitioners allege that, under California law, the transfer to Tabor of a quitclaimed interest in the San Felipe property, subsequent to petitioners' sale of the property, operated as a conveyance to Tabor of an interest in the note and trust deed.

record of any other conveyance, deed, or assignment to Tabor in 1966 upon which the remaining one-half of the claimed charitable contribution deduction could be based.

On May 4, 1972, Charles was indicted, inter alia, for filing a false statement on his 1966 joint Federal income tax return in violation of section 7206(1), I.R.C. 1954,[5] in that "the said income tax return claimed a contribution deduction to Tabor Academy in the amount of $20,781.31, whereas, as he then and there well knew and believed that he was not entitled to said deduction in any amount." He was also indicted under section 7206(1) for filing a false statement on his 1967 joint Federal income tax return, "in that the said income tax return claimed a contribution deduction to Tabor Academy in the amount of $3,028.21, whereas, as he then and there well knew and believed that he was not entitled to said deduction in any amount." Thalia was not indicted.

On March 2, 1973, Charles was convicted by the U.S. District Court, San Diego, Calif., sitting without a jury, under both of the above counts of the indictment. *United States v. Considine*, an unreported case (S.D. Cal. 1973, 34 AFTR 2d 74–5412, 74–2 USTC par. 9639), affd. per curiam in an unreported opinion (9th Cir., Nov. 21, 1973, 74–2 USTC par. 9846), cert. denied 416 U.S. 970 (1974).

The District Court in *United States v. Considine* concluded as a matter of law that:

7. As to that portion of the contribution claimed relative to the recorded $\frac{1}{21}$ undivided interest to Tabor Academy, the government has failed to prove its case beyond a reasonable doubt.

8. The defendant falsely claimed on his 1966 tax return as a contribution to Tabor the alleged June 1966 gift in the amount of $11,904.76, $3,028.21 of which was carried over as a contribution claim by defendant in his 1967 return.

\* \* \* \* \* \* \*

10. Defendant did not believe the 1966 return to be true and correct in that he reported the charitable contribution to Tabor in the amount of $20,781.31, whereas, he then and there well knew, he was entitled to, at most, such a contribution claim of only $11,904.76, thereby overstating his contribution claim by $8,876.55.

11. The defendant was not entitled to claim the $3,028.21 contribution carry-over as a deduction on his 1967 tax return.

---

[5]All section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue, unless otherwise indicated.

12. Defendant willfully made and subscribed the 1967 tax return which contains his written declaration that it was made under penalty of perjury. He did not believe the return to be true and correct in that he claimed a contribution carry-over in the amount of $3,028.21, whereas, as he then and there well knew, he was not entitled to claim any portion thereof.

On April 5, 1976, respondent issued to petitioners for the years 1965, 1966, and 1967 a statutory notice of deficiency asserting additions to tax under section 6653(b) for each of the years. No deficiencies in tax were asserted for any of the years because of net operating loss deductions carried back from 1968. The section 6653(b) additions to tax were imposed on the deficiencies which would have arisen due to respondent's adjustments for each of those years, but for the deduction of the net operating loss carrybacks. The additions to tax determined for 1966 and 1967 were $12,403 and $2,851, respectively. In computing the deficiencies which would have arisen (but for the deduction of the net operating loss carrybacks) and which served as the basis for computing the section 6653(b) additions to tax for 1966 and 1967, respondent disallowed petitioners' claimed deductions of $20,781.31 and $3,028.21 for charitable contributions to Tabor. The amounts were disallowed as deductions because it had "not been established that the [amounts deducted were] * * * contributed in cash or other property in these respective years."[6]

Petitioners did not petition this Court for a redetermination of respondent's determinations set forth in the notice of deficiency. Consequently, the additions to tax were assessed, and on or about June 27, 1977, petitioners paid the section 6653(b) additions to tax in the amounts of $12,403 and $2,851 for 1966 and 1967, respectively.[7]

---

[6]On Apr. 11, 1979, respondent issued to petitioners a second statutory notice of deficiency for the taxable years 1965, 1966, and 1967. For the years 1966 and 1967, deficiencies in tax were determined, principally on the basis of a reduction in the net operating loss for 1968 and the concomitant reduction in net operating loss carrybacks to 1966 and 1967. Respondent continued to disallow in full petitioners' deductions of $20,781.31 and $3,028.21 for 1966 and 1967, respectively, for charitable contributions to Tabor. No petition requesting a redetermination of the deficiencies was filed in this Court.

[7]Respondent's post-trial briefs indicate that petitioners currently have pending before the U.S. Court of Claims a claim for refund of the sec. 6653(b) additions to tax paid for 1966 and 1967.

*1970 Charitable Contribution Deduction*

In 1968, a judgment in the amount of $1,271,000 was entered in a California State court in favor of Mrs. Kathryn B. Norris against Charles and others for malpractice.[8] Later in 1968, the $1,271,000 judgment was reversed by a California appellate court. On November 21, 1968, Mrs. Norris and Charles entered into a written settlement agreement wherein it was agreed that all the claims Mrs. Norris had against Charles were to be settled for $400,000. This $400,000 was to be comprised of notes, trust deeds, and cash. Included within the notes and trust deeds to be assigned to Mrs. Norris was the note and deed of trust for $250,000 (reduced to $225,000) received by petitioners from Capri Builders, Inc., as a result of the sale of the San Felipe property.

Subsequent to the execution of the settlement agreement, Charles contacted Tabor concerning its interest in the note and trust deed which were received by petitioners upon the sale of the San Felipe property and which were to be assigned to Mrs. Norris as part of the settlement agreement. Although settlement of the malpractice claim did not require that Charles obtain Tabor's release of any interest it had in the note and trust deed, Charles contacted Tabor in order to explain what had occurred. Charles presented Tabor with two alternatives, they being that Tabor could retain whatever interest it had, or it could quitclaim the interest to Mrs. Norris. Tabor was not compelled to accept either alternative. In the event Tabor chose to quitclaim its interest, Charles stated that he would provide cash as replacement therefor. There was, however, no specific agreement or contract concerning any replacement cash nor was a specific dollar amount mentioned or discussed. If Tabor chose to retain its interest, Charles was required to pay Mrs. Norris an additional sum of cash in the amount of $10,714.28, which amount equaled $\frac{1}{21}$ of the $225,000 face amount and then-outstanding balance of the note.

Tabor elected to quitclaim the interest, and in March 1969, it did so by quitclaiming to Mrs. Norris any interests it may have

---

[8]Charles was a certified public accountant and was a partner in the accounting firm of Considine & Considine.

had in the San Felipe property and in the note and trust deed pertaining thereto.[9] Being located in Massachusetts, Tabor preferred receiving cash to having an interest in property located in California, or in a note and deed of trust with regard thereto. Subsequently, the settlement of Mrs. Norris' claims against Charles was consummated.

In January 1970, petitioners paid $20,000, by check, to Tabor. The check was accompanied by a letter from Charles which stated, "Here is the money I promised." No restriction was placed on Tabor's use of the money. On their joint income tax return for 1970, petitioners deducted as a charitable contribution the $20,000 paid to Tabor. Tabor was, during 1970, an organization within the meaning of section 170(c)(2)(B).

Prior to 1970, petitioners had made gifts, including one of approximately $60,000, to schools other than Tabor. Although petitioners' son had attended Tabor, the $20,000 payment was in no way attributable to said son's admittance to or attendance at Tabor.

The statutory notice of deficiency which gave rise to the instant case was mailed to petitioners on April 10, 1974. Respondent determined therein, inter alia, that petitioners' claimed charitable contribution deduction in the amount of $22,116 was allowable only to the extent of $1,516. No additional explanation was provided. Petitioners subsequently conceded the nondeductibility of $600 of the total $20,600 amount disallowed by respondent as a deduction, thus leaving for dispute a $20,000 deduction.

Accompanying the notice of deficiency was a copy of the report prepared by the Audit Division of the Internal Revenue Service which explained the disallowance of the $20,000 deduction as follows:

The examination disclosed that taxpayers had previously claimed a contribution deduction of $23,809.52 to Tabor Academy in 1966 which represented the value of $11,904.76 on each of two separate purported conveyances of a $\frac{1}{21}$ interest in a $250,000 trust deed note to 450 acres of unimproved real property known as the San Felipe property.

Later, in the aftermath of a bitter malpractice lawsuit, taxpayers assigned the $250,000 trust deed note to the judgment creditor. As a precondition,

---

[9]No evidence was introduced concerning what amounts, if any, Tabor received during the period 1966–69 on account of its interest in the note and trust deed.

however, to the assignment of the trust deed note, taxpayers were compelled to pay $20,000 cash in 1970 to Tabor Academy for the latter's release and surrender of any vested rights they may have had in the note.

The $20,000 cash payment to Tabor Acacemy [sic] in 1970 was claimed as a contribution deduction on the 1970 return, but obviously, is merely a duplication of a purported gift that had already been claimed as a tax deduction in the prior year of 1966. Accordingly, taxpayers have overstated their cash contributions in 1970 by $20,000 in view that they have previously received a tax benefit for the same contribution to Tabor Academy in 1966.

### OPINION

The principal issue to be decided herein is whether petitioners are entitled to any charitable contribution deduction for the payment of $20,000 to Tabor in 1970. Prior to addressing the merits of this question, it is first necessary to dispose of a procedural matter.

During trial, petitioners made a "Motion to Exclude or Prohibit Testimony and Documentary Evidence" with respect to respondent's contention that a charitable contribution deduction for the $20,000 payment to Tabor in 1970 was unallowable because petitioners lacked the necessary donative intent when making the payment. This Court took petitioners' motion under advisement and allowed respondent to introduce evidence with respect to his contention (subject to petitioners' continuing objection), pending a decision on petitioners' motion. On May 25, 1979, an order denying petitioners' motion was issued. The reasons for said order will be set forth *infra*.

Twelve days before trial of this case and almost 4 years after the notice of deficiency was issued for the taxable year 1970, respondent orally informed petitioners' counsel that the basis for disallowing the charitable contribution deduction claimed for the $20,000 payment to Tabor was the lack of donative intent. Briefly stated, respondent contends that petitioners lacked donative intent in making the $20,000 payment because this payment was in return for Tabor's earlier release of its interest in the note and trust deed received by petitioners from the sale of the San Felipe property. Respondent did not amend his answer to include specifically this basis for denying the claimed deduction.

Petitioners have challenged respondent's right to rely on lack of donative intent as the basis for disallowing the charitable contribution deduction on three grounds. As a matter of substantive law, petitioners argue that both the doctrine of

election and respondent's duty of consistency preclude respondent from asserting lack of donative intent to justify the disallowance of the deduction for the 1970 payment to Tabor. They argue that this position is inconsistent with that successfully asserted in connection with the claimed charitable contribution to Tabor in 1966 by the United States in convicting Charles of violating section 7206(1) and by respondent in determining section 6653(b) additions to tax. As a matter of procedure, petitioners assert that lack of donative intent constitutes a new issue which was not raised in the notice of deficiency or in respondent's answer and, therefore, should not be considered by the Court.

Petitioners' substantive objections to respondent's reliance on lack of donative intent as the basis for disallowing the 1970 charitable contribution deduction are grounded in the following reasoning: Both Charles' section 7206(1) conviction for filing a false statement on his 1966 income tax return and respondent's determination of section 6653(b) additions to tax for 1966 were based on the premise that Charles knew that no charitable contribution had been made to Tabor in 1966.[10] If petitioners made no charitable contribution in 1966, Tabor had no interest to quitclaim in 1969. If Tabor had no interest to quitclaim, then petitioners cannot have lacked donative intent in making the $20,000 payment since they received nothing in return. Thus, petitioners assert, respondent cannot now be heard to argue that a prior donation was returned in exchange for petitioners' $20,000 payment when respondent had previously determined that there had in fact been no earlier donation.

Although at first blush the positions taken by respondent with respect to 1966 and 1970 appear to be inconsistent, closer scrutiny reveals they are not. At the core of petitioners' argument is the idea that for respondent to prevail on the donative intent argument, it is necessary that a valid conveyance have been made to Tabor in 1966. Such is not, however, the case. Regardless of the legal effectiveness of the original conveyance to Tabor in 1966, and regardless of petitioners'

---

[10] It is not accurate to say that Charles' sec. 7206(1) conviction was grounded on the premise that no charitable contribution was made to Tabor in 1966, since Charles was acquitted of the charged offense with regard to the one-half of the charitable contribution deduction which was based on the recorded quitclaimed deed. Because of our reasons for denying petitioners' motion, however, we need not consider how this inaccuracy affects petitioners' argument.

knowledge concerning that legal effectiveness, petitioners had executed and recorded a quitclaim deed in favor of Tabor. This deed, at the very least, created a question as to whether Tabor had an interest in the San Felipe property or was entitled to any of the proceeds from the note received from the sale of the property.

Tabor quitclaimed whatever interest it may have had in the note, trust deed, and property to Mrs. Norris. Although the quitclaim deed may not have conveyed any interest, since there was none to be conveyed, it did render moot any question concerning what petitioners had conveyed to Tabor in 1966. If petitioners made the $20,000 payment to Tabor for the purpose of rendering this question moot by obtaining Tabor's release of whatever interest it had, the donative intent necessary for a charitable contribution would be missing. See *infra*. Thus, the effectiveness of the 1966 conveyance or petitioners' beliefs with regard thereto are not necessarily relevant to the issue of the allowability of a charitable contribution deduction for the 1970 payment.

Linkage of the $20,000 payment to execution of the quitclaim deed to Mrs. Norris, of course, must be proved, but petitioners are not being caught between inconsistent positions by respondent. The theory that petitioners paid $20,000 for a quitclaim deed means only that. There is no inherent reversal of the Government's position with regard to the 1966 transaction in the assertion of the donative intent theory for 1970. Therefore, the positions are not inconsistent nor do they result in petitioners' being taxed twice on the same transaction under different theories.

Petitioners' procedural objection is that the question of donative intent constitutes a new issue not raised in the notice of deficiency or the answer. As succinctly explained in *Estate of Horvath v. Commissioner*, 59 T.C. 551, 555 (1973):

> It is well settled that the respondent's determination may be affirmed for reasons other than those assigned in his notice of deficiency. However, it is equally clear that the Court must determine whether there has been surprise and substantial disadvantage to the petitioner in the presentation of his case because of the manner in which the statutory notice and pleadings were drawn when compared to the issues raised at the trial. In this Court's opinion, it is appropriate to determine whether surprise and disadvantage are present prior to making the often esoteric finding that a particular theory advanced by the respondent has characteristics more like new "reasons" than new "issues" or

"matters." This is so because once surprise and substantial detriment are found, the theory, whether a new reason or new issue, need not be heard by this Court. [Citations omitted; fn. ref. omitted.]

Respondent argues that petitioners could not have been surprised or prejudiced by the donative intent question. Not only were they orally informed 12 days before trial by respondent that he intended to rely upon the lack of donative intent theory, but they could have gleaned the theory from the Audit Division report accompanying the notice of deficiency. In support of this argument, respondent points to the statement in the report that "As a precondition, however, to the assignment of the trust deed note, taxpayers were compelled to pay $20,000 cash in 1970 to Tabor * * * for the latter's release and surrender of any vested rights they may have had in the note." Nonetheless, since the next paragraph in the Audit Division report sets forth the tax benefit rule as the basis for disallowing the charitable contribution, we find it not unlikely that petitioners might fail to infer the donative intent theory from the quoted statement.

One factor, however, undercuts the conclusion that petitioners were surprised and prejudiced by respondent's advancing an argument other than the tax benefit rule as the ground for denying the charitable contribution deduction. To be viable at all, the tax benefit rule theory as articulated in the Audit Division report, is predicated on the charitable contribution claimed in 1966 being upheld or allowed.[11] The statutory notice of deficiency in which the charitable contribution deduction for the $20,000 payment to Tabor was disallowed was issued in April 1974. Prior thereto, Charles had been convicted, which conviction had been upheld on appeal, for filing a false statement on his 1966 return with regard to $11,904.76 of the $23,809.52 claimed contribution. Moreover, on April 5, 1976, a notice of deficiency disallowing the claimed deduction and asserting the fraud penalty for the taxable years 1966 and 1967 was issued to petitioners. The computations of the additions to tax, which were paid by petitioners, were based in part on the disallowance of the charitable contribution deductions claimed in 1966 and 1967. Such being the case, it should have been obvious to petitioners that the tax benefit rule rationale for disallowing the

---

[11]Respondent did not advance the tax benefit rule theory in the trial of this case or on brief. Accordingly, we need not consider it.

1970 charitable contribution deduction could no longer be asserted by respondent, at least if he hoped to prevail in the action. That awareness by Charles, who is an experienced tax accountant, taken in conjunction with the quoted portion of the Audit Division report and with petitioners' counsel's awareness, prior to trial, of the donative intent theory, precludes a finding of any prejudicial detriment to petitioners.[12]

Because of the absence of prejudicial detriment, the next question would ordinarily be whether the lack of the donative intent theory constitutes a new issue which requires an amendment to the answer and a shift in the burden of proof. If merely a new reason, no amendment is required, and the burden remains with petitioners. See *Estate of Horvath v. Commissioner, supra* at 556; *Tauber v. Commissioner,* 24 T.C. 179, 185 (1955); *McSpadden v. Commissioner,* 50 T.C. 478, 493 (1968). Because we are of the opinion, based on the record presented, that our conclusion concerning the question of donative intent would be the same regardless of which party had the burden of proof, and because we have concluded that petitioners were not surprised to their detriment by respondent's reliance on the donative intent theory, it is not necessary to decide the "often esoteric" question of whether a new issue or a new reason has been raised. See *Estate of Horvath v. Commissioner, supra* at 555; *Nat Harrison Associates, Inc. v. Commissioner,* 42 T.C. 601, 617 (1964).

The substantive issue in this case is whether petitioners are entitled to a charitable contribution deduction pursuant to section 170 for the payment of $20,000 to Tabor in 1970. Section 170(c) generally defines "charitable contribution" as a contribution or gift to those organizations which are described in that section.[13] It is undisputed that Tabor met the requirements of

---

[12]By this conclusion, we do not intend to suggest that, when the statutory notice of deficiency contains a clearly untenable theory in support of respondent's determination, a taxpayer must anticipate a different theory. Our conclusion, based on the record, is limited to the finding that petitioners were not prejudiced by respondent's advancement of the donative intent theory.

[13]SEC. 170(c). CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

\*     \*     \*     \*     \*     \*     \*

(2) A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State or Territory, the District of Columbia, or any possession of the United States;

section 170(c)(2)(B) in 1970. Thus, the specific question to be decided is whether the $20,000 payment was a "contribution or gift."

The term "charitable contribution" as used in section 170 has been generally held synonymous with the term "gift." *DeJong v. Commissioner*, 36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962); *Sutton v. Commissioner*, 57 T.C. 239, 242 (1971). "A gift is generally defined as a voluntary transfer of property by the owner to another without consideration therefor. If a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift." *DeJong v. Commissioner, supra* at 899. "If the transfer is impelled primarily by the anticipation of some economic benefit or is in fact an exchange in the form of a substantial quid pro quo, it is not a contribution." *Rusoff v. Commissioner*, 65 T.C. 459, 469 (1975), affd. 556 F.2d 559 (2d Cir. 1977). See also *Singer Co. v. United States*, 196 Ct. Cl. 90, 105–106, 449 F.2d 413, 422 (1971); *Stubbs v. United States*, 428 F.2d 885, 887 (9th Cir. 1970), cert. denied 400 U.S. 1009 (1971); *Grinslade v. Commissioner*, 59 T.C. 566, 577 (1973).

In determining whether a statutory contribution or gift was made, the primary factor is the transferor's dominant motive or intention in making the transfer. *Commissioner v. Duberstein*, 363 U.S. 278, 286 (1960). Identification of the dominant motive for the transfer must be made on the basis of all the facts. *Commissioner v. Duberstein, supra* at 289. In so identifying the dominant motive, "our examination is not limited to the narrow probing of the subjective attitude of the donor and the degree of charitable benevolence which may have prompted the transfer. We must look at the true nature of the transaction, and make an objective inquiry as to whether what is called a gift actually amounts to that in reality." (Citations omitted.) *Pettit v. Commissioner*, 61 T.C. 634, 638–639 (1974).

---

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * *

Based on all the facts, it is our conclusion that the payment to Tabor had a dual character and contained both deductible and nondeductible portions. Clearly, a portion of the $20,000 payment was intended to compensate Tabor for its quitclaiming of its interest (whatever it may have been) in the trust deed and note and such portion, in the amount of $10,714.28 ($\frac{1}{21}$ of $225,000), is not deductible pursuant to section 170. The remaining portion of the $20,000 is allowable as a deduction under section 170.

As to the portion of the $20,000 payment which was intended to repay Tabor, it "is well established that payments to an organization which qualifies as a charity are deductible as a charitable contribution under section 170 only to the extent the amount thereof exceeds the fair market value of any material benefit received in return." *Murphy v. Commissioner*, 54 T.C. 249, 253 (1970). See also *Collman v. Commissioner*, 511 F.2d 1263 (9th Cir. 1975), affg. in part and revg. in part a Memorandum Opinion of this Court, where the amount of the allowable charitable contribution was reduced by the value of the benefit received in return. It cannot be disputed that Charles received a material benefit when Tabor executed the quitclaim of any interest in the note and trust deed. Regardless of what interest petitioners had conveyed to Tabor in 1966, had Tabor not executed the quitclaim, Charles would have been obligated to pay additional cash to Mrs. Norris in an amount equal to $\frac{1}{21}$ of $225,000. Under such circumstances, it can only be concluded that Charles received a benefit of equal value when Tabor executed the quitclaim.

It is recognized that Charles had no legal obligation to repay Tabor for the interest it quitclaimed. Absence of such an obligation, however, does not mandate the conclusion that the payment is a deductible charitable contribution. *DeJong v. Commissioner, supra*. It is also recognized that it is the more usual case to have the "contribution" for which the deduction is sought precede the occurrence of the charitable organization's action which provides the "consideration" for the "contribution," i.e., that the taxpayer's action is in anticipation of some economic benefit. See, e.g., *Collman v. Commissioner, supra; DeJong v. Commissioner, supra; Sutton v. Commissioner, supra.* Nevertheless, the reversal of the sequence does not dissuade us from the conclusion that Charles' contribution was in part

repayment for Tabor's action. While it is true that Charles did not make the payment under the incentive of an anticipated benefit, it is equally true that he had promised to make the payment and that he had previously received a benefit, the bestowal of which was in no small part caused by Charles' statement that he would provide a cash substitute for Tabor's execution of the quitclaim. Tabor's execution of the quitclaim based on Charles' statement, Charles' receipt of a benefit as a result thereof, and Charles' action in accordance with his earlier statement, all support the conclusion that the payment was not "entirely lacking the constraining force of any moral or legal duty * * * beyond the satisfaction which flows from the performance of a generous act." *Bogardus v. Commissioner*, 302 U.S. 34, 41 (1937).[14]

As to the remaining portion of the $20,000 payment, we are equally convinced of its deductibility under section 170. While payment of the portion of the $20,000 in excess of $10,713.33 may have been motivated in part by Tabor's execution of the quitclaim, where, as here, the value of the benefit received is clearly ascertainable, and the value of the "donation" clearly exceeds the benefit received, we see no reason for denying a charitable contribution deduction for that excess amount. See *Murphy v. Commissioner, supra* at 254. Surely, petitioners received no benefit or consideration for this excess amount. Accordingly, we conclude that petitioners are entitled to deduct $9,285.72 ($20,000, less $10,714.28) as a charitable contribution.

In their reply brief, petitioners for the first time make the argument that to the extent any portion of the $20,000 is not deductible as a charitable contribution due to the lack of donative intent, said portion is deductible under section 162 as an ordinary and necessary business expense incurred in settling the

---

[14]Petitioners argue in the alternative that even if it has been established that Charles did not have the requisite donative intent, because the $20,000 payment was made from a joint checking account, and because there has been no evidence that Thalia lacked the necessary intent, the charitable contribution is allowable. We do not agree. Charles' lack of donative intent as to a portion of the payment is sufficient alone under these circumstances to preclude a charitable contribution deduction as to that portion. It was Charles who contacted Tabor about releasing its interest, it was Charles who particularly benefited by that release, and it was Charles who made the payment. Furthermore, Tabor released its interest based on Charles' statement. While Thalia may have concurred in the payment, it is clear that Charles "made" the payment, notwithstanding the use of joint checking account funds. To hold under these circumstances that the absence of any evidence that Thalia lacked donative intent is sufficient to support the deduction is untenable.

malpractice claim against Charles. Petitioners' alternative argument is untimely, and we will not consider it. *McMaster v. Commissioner*, 69 T.C. 952, 956 (1978). *Molbreak v. Commissioner*, 61 T.C. 382, 393 (1973), affd. per curiam 509 F.2d 616 (7th Cir. 1975). While it is true that it was only subsequent to the trial of this case that the Court ruled that respondent's donative intent argument would be considered, nonetheless, petitioners had adequate time following trial to prepare their section 162 contention and include it in their opening brief so that respondent could reply thereto. Had petitioners done so, the Court would be more inclined under the circumstances of this case to consider petitioners' argument, particularly if respondent had been given an opportunity to reply. Petitioners, however, in their opening brief chose not to address the donative intent argument at all. Rather, they addressed only the tax benefit rule theory. This was done despite the fact that the Court had denied petitioners' motion concerning the donative intent theory prior to the date for submission of opening briefs. In view of the foregoing, we will not consider petitioners' section 162 argument.

In summary, it is our conclusion that petitioners are entitled to a charitable contribution deduction of $9,285.72 for the payment to Tabor in 1970.

*Decision will be entered under Rule 155.*