PRIMO PANTS COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12995–78.     Filed April 26, 1982.

*Philip A. Kaiser, Stanley M. Rosenblum,* and *Michael A. Markenson,* for the petitioner.
*Paul K. Voelker,* for the respondent.

PARKER, *Judge*: Respondent determined deficiencies in petitioner's Federal income taxes for the fiscal years ending November 30, 1973, November 30, 1974, and November 30, 1975, in the amounts of $119,118, $59,369, and $33,566, respectively. After concessions by the parties, the issue for decision is whether there has been a change in petitioner's method of accounting.

#### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioner Primo Pants Co. (Primo) is a corporation with its principal offices located in St. Louis, Mo. Primo filed corporate

income tax returns for its fiscal years ending November 30, 1973, through November 30, 1975, inclusive, with the Internal Revenue Service Center, Midwest Region, in Kansas City, Mo. Primo's tax returns indicated that it used the accrual method of accounting and a method of inventory valuation identified as "lower of cost or market."

Primo was incorporated August 1, 1919, under the laws of the State of Missouri, and has been since 1919 a manufacturer of men's pants, which are sold to various retail outlets throughout the United States. During each of the years in issue, the materials used in the manufacturing of Primo's pants consisted of "piece goods" and "trim." Piece goods included cloth or fabric. Trim included buttons, zippers, waistbands, and thread. The manufacturing process consisted of cutting the piece goods, sewing and assembling the cut piece goods together with the trim, and pressing the finished product. Some of the pants were manufactured at petitioner's plant in Versailles, Mo. The remainder were manufactured to petitioner's specifications by three or four different subcontractors. Petitioner furnished the piece goods used by the subcontractors. The subcontractors furnished the trim, together with the labor and plant facilities necessary to complete the pants. Finished pants, whether manufactured by petitioner at its plant in Versailles or by subcontractors at their plants, were shipped to petitioner's office-warehouse in St. Louis, Mo. The pants were then reshipped to petitioner's customers who had purchased the pants.

Physical inventories were taken of piece goods, trim, work in process, and finished pants at the end of each year, fiscal year ending November 30, 1973 (7311), fiscal year ending November 30, 1974 (7411), and fiscal year ending November 30, 1975 (7511). The various items inventoried were separated into six categories for valuation purposes, and these six components of petitioner's inventory were: (1) Piece goods at Versailles, (2) piece goods in the possession of subcontractors, (3) piece goods at St. Louis, (4) trim at Versailles, (5) work in process at Versailles, and (6) finished pants at St. Louis and Versailles. Inventories of piece goods in the possession of subcontractors were taken by the subcontractors, and a partial physical inventory was taken of piece goods at St. Louis. Inventory

sheets were prepared with respect to each of the categories of inventory.

The inventory sheets with respect to piece goods at Versailles and piece goods at St. Louis reflected each fabric's style and color number, and the number of yards of fabric on hand. Some of the inventory sheets for piece goods at St. Louis had been prepared in prior years. Primo's president, Martin Landis, assigned an amount per yard with respect to each style number of piece goods (with a few exceptions for the taxable year 7511). This assigned amount was multiplied by the total yards of each style number, arriving at a total amount for each style number. These totals were then added to arrive at the total figure for the piece goods inventory at Versailles and at St. Louis.

The inventory sheets with respect to piece goods in the possession of subcontractors reflected the style and color number and total yards of each fabric purchased by Primo and shipped to subcontractors but which had not been returned as finished pants. An amount per yard was then assigned with respect to each style of piece goods and multiplied by the number of yards of each style, arriving at an amount for each style of piece goods. These amounts were added to arrive at the total figure for piece goods in the possession of each subcontractor. Each subcontractor's total was then added to arrive at the total amount of piece goods in the possession of all subcontractors.

The inventory sheets with respect to trim at Versailles listed and quantified the various categories of trim (with a few exceptions for the taxable year 7311). Martin Landis assigned an amount with respect to each category of trim. These amounts were added to arrive at the total figure for trim inventory.

The inventory sheets with respect to work in process at Versailles reflected the number of pairs of pants of each style and color in process, the number of yards of fabric necessary to complete the stated number of pants, and the percentage of the process completed. The actual cost per yard with respect to the fabric in process was multiplied by the total yards of fabric with respect to each style of pants in process to arrive at the total cost of fabric in process for each style. The totals were

then added to arrive at the actual cost of materials in process, and this figure was used for work-in-process inventory.

Inventory sheets were prepared with respect to finished pants at St. Louis and Versailles. These sheets reflected the style and color number and quantity with respect to each style and color of finished pants in inventory. The number of pants in each style was multiplied by the selling price (to Primo's customers) of that style to arrive at the total selling price for each style of finished pants in inventory. The totals were then added to reach the total selling price of all finished pants in inventory.

The amounts reflected in ending inventory on Primo's Federal income tax returns for the years in issue were generally different from the amounts on the inventory sheets for the six categories of inventory, as just described. Finished pants at St. Louis and Versailles were consistently valued for tax purposes at 50 percent of petitioner's selling price. For taxable years 7411 and 7511, piece goods at Versailles, piece goods in the possession of subcontractors, piece goods at St. Louis, trim at Versailles, and work in process at Versailles were valued as indicated in the paragraphs above, but then an additional 50-percent reduction was taken to arrive at the amount included in inventory as shown on the Federal tax returns. For taxable year 7311, petitioner had no piece goods in the possession of subcontractors or piece goods at St. Louis for that year. However, piece goods at Versailles, trim at Versailles, and work in process at Versailles were valued as indicated in the paragraphs above, but without the 50-percent reduction that was taken in taxable years 7411 and 7511.

Respondent revalued each of the components that were included in ending inventory on the returns for the taxable years 7311, 7411, and 7511. In revaluing petitioner's inventory, respondent examined or had petitioner's bookkeeper examine for him petitioner's records including inventory summary sheets, inventory detail sheets, purchase invoices, price or cost cards, and other records of costs. No adjustment was made with respect to piece goods at Versailles for 7311 because there was no information to make any other determination, and for that reason, the revenue agent accepted petitioner's figure. Respondent's adjustment to petitioner's ending trim inventory for 7311 was made by extending correct cost figures from

petitioner's price cards and comparing that amount to the figure used on petitioner's summary sheets to prepare the 7311 tax return. The principal adjustment to ending inventory for 7311 related to placing work in process at Versailles and finished pants at St. Louis and Versailles on a full absorption method of costing, which will be discussed below.

Respondent's adjustments to petitioner's 7411 ending piece goods inventory at Versailles were made by comparing the prices on the price cards with the prices listed on the detail sheets and correcting them. The incorrect prices were corrected, reextended, and totaled. The total was compared to the amount that was listed by petitioner on the summary sheet petitioner prepared for reporting inventory on its 7411 tax return. The 7411 inventory of piece goods in the possession of subcontractors, as reported by the subcontractors to petitioner and as reflected on petitioner's books, had been reduced by petitioner by 50 percent on petitioner's Federal income tax return. Respondent disallowed this 50-percent reduction. Respondent did not verify the figures the subcontractors had reported to petitioner, but accepted those subcontractors' figures, just as petitioner had.

The 7411 piece goods inventory at St. Louis was primarily scrap material valued at 25 cents per yard, based upon an offer to buy the material at that price. On its tax return, petitioner had reduced the figure by 50 percent, thus reporting only 12½ cents per yard. Part of respondent's revaluation included correcting errors made in transcribing amounts from the detail sheets to the summary sheets, and disallowing the 50-percent reduction.

Respondent adjusted petitioner's 7411 ending trim-at-Versailles inventory by correcting cost figures for the particular items of trim and comparing the corrected cost figures with the cost figures used by petitioner, and again disallowing the 50-percent reduction.

Respondent's revaluation of Primo's 7511 piece goods at Versailles was made by comparing the cost figures used by Primo with the invoices and price or cost cards, and, where different, by inserting the correct cost figures from petitioner's records. Some items on petitioner's inventory sheets had no cost figures assigned and had been omitted by petitioner. Respondent inserted the correct cost figures, extended the

figures, and included these omitted items of piece goods in the piece goods inventory total figure.

The adjustment to petitioner's 7511 trim-at-Versailles inventory was made when respondent secured the correct cost figures, reextended the quantities, totaled them, compared them to the amount shown by petitioner, and made the correction. This adjustment restored $56,712 of trim inventory that had been omitted and again disallowed the 50-percent reduction taken by petitioner on its tax return. For 7511, respondent also included an inventory item of materials in transit that petitioner had omitted from its tax return for that year.

For all 3 years, petitioner reported finished pants at 50 percent of their selling price in computing inventory on its 7311, 7411, and 7511 Federal income tax returns. Respondent revalued the finished pants inventory each year by determining the average cost per pair of pants with respect to raw materials and then adding a factor for direct labor and factory overhead to place the finished pants inventory on the full absorption method of accounting for inventory. Similar changes were made for work in process for all 3 years.

The work-in-process inventory figures on petitioner's detail sheets for 7311, 7411, and 7511 accurately reflected the actual cost of the raw materials in process. Respondent added a factor for direct labor and factory overhead related to the cost of the raw materials so that the work in process would be placed on the full absorption method of accounting for inventory. Respondent also disallowed the 50-percent reduction that petitioner had taken for this inventory category on its 7411 and 7511 tax returns.

To compute the portion of factory overhead and the allocation of direct labor to the finished goods and work in process, respondent examined the costs of operating petitioner's manufacturing facilities. Then, after adding all the production costs together, respondent divided that total by the equivalent units of production.[1] The factor was then included in valuing the

---

[1]Each completed pair of pants is considered one equivalent unit. If a pair of pants is in process and is half completed, it is one half of an equivalent unit. Thus, if there are 10,000 items in process that are 50-percent completed, there are 5,000 equivalent units.

finished pants and the work-in-process inventory under the full absorption method of accounting for all 3 years.

As noted in the discussion of the various adjustments above, implicit in respondent's revaluation was a disallowance of the 50-percent reductions that petitioner had taken for piece goods, trim, and work in process for 7411 and 7511. In summary, respondent's revaluation of petitioner's ending inventory for each of the years in question was as follows:

Taxable Year Ending Nov. 30, 1973 (7311)

|  | Per return | As adjusted | Adjustment |
| --- | --- | --- | --- |
| Piece goods at Versailles | $143,487 | $143,487 | 0 |
| Trim at Versailles | 28,780 | 76,654 | $47,874 |
| Work in process at Versailles | 45,733 | 59,190 | 13,457 |
| Finished pants at St. Louis and Versailles | 280,880 | 447,485 | 166,605 |
| Total ending inventory 7311 | 498,880 | [2] 726,816 | 227,937 |

Taxable Year Ending Nov. 30, 1974 (7411)

|  | Per return | As adjusted | Adjustment |
| --- | --- | --- | --- |
| Piece goods at Versailles | $48,621 | $170,661 | $122,040 |
| Piece goods at subcontractors' | 19,368 | 38,737 | 19,369 |
| Piece goods at St. Louis | 27,040 | 71,556 | 44,516 |
| Trim at Versailles | 18,358 | 66,003 | 47,645 |
| Work in process at Versailles | 20,053 | 61,516 | 41,463 |
| Finished pants at St. Louis and Versailles | 111,280 | 171,044 | 59,764 |
| Total ending inventory 7411 | [3] 244,720 | [4] 579,517 | 334,797 |

---

[2] This figure of $726,816 was stipulated by the parties in par. 13 as the adjustment made by respondent, but at par. 18 in their stipulation, they listed the figure for closing inventory 7311 as $726,817. The latter figure probably is correct since it results in the total adjustment of $227,937 that the parties agreed to in both pars. 13 and 18 of the stipulation. That figure of $726,817 also appears again in pars. 19 and 22 of the stipulation.

[3] This figure of $244,720 was stipulated by the parties in par. 13 as the amount stated on the income tax returns as ending inventory 7411 (and beginning inventory 7511). However, that figure does not correspond to the $247,718 which was actually stated on the returns as ending inventory for 7411 and beginning inventory for 7511. The $247,718 was the figure the parties also stipulated in two other paragraphs of their stipulation as reported on the return. The reason for this discrepancy does not appear on the record, but apparently it was an error in respondent's detailed adjustments. The figure for ending inventory for 7411 and beginning inventory for 7511, as shown on the tax returns, was $247,718.

[4] Pars. 19, 20, and 22 of the stipulation gives this figure as $579,518, whereas par. 13 lists it as $579,517. This discrepancy is not explained in the record, but probably was an error in respondent's detailed adjustments.

Taxable Year Ending Nov. 30, 1975 (7511)

| | Per return | As adjusted | Adjustment |
|---|---|---|---|
| Piece goods at Versailles | $40,060 | $115,435 | $75,375 |
| Piece goods at subcontractors' | 74,299 | 148,599 | 74,300 |
| Piece goods at St. Louis | 13,309 | 26,618 | 13,309 |
| Trim at Versailles | 24,253 | 105,217 | 80,964 |
| Materials in transit | 0 | 55,319 | 55,319 |
| Work in process at Versailles | 39,982 | 108,438 | 68,456 |
| Finished pants at St. Louis and Versailles | 104,927 | 135,226 | 30,299 |
| Total ending inventory 7511 | [5] 296,830 | 694,852 | 398,022 |

Petitioner agrees that the following adjustments to its inventory made by respondent are correct:

| FYE | Opening | Closing |
|---|---|---|
| 7311 | .................................... | $726,817 |
| 7411 | ............. $726,817 | 579,518 |
| 7511 | ............. 579,518 | 694,852 |

In his statutory notice of deficiency, respondent did not make any adjustment to petitioner's opening inventory for 7311 (closing inventory for 7211). No adjustment was made because during the audit petitioner could not locate its records that were necessary for such an adjustment.

Sometime after this case was set on the trial calendar, respondent was furnished sufficient records to revalue petitioner's beginning inventory for 7311 (ending inventory for 7211). Petitioner's tax return for 7211 reflected closing inventory of $436,591 (opening inventory 7311), a figure that represented 66⅔ percent of the value of petitioner's inventory as reflected on its books. Respondent revalued petitioner's 7211 ending inventory (7311 opening inventory) using the full absorption method of inventory costing. This revaluation was done in substantially the same manner as the revaluation of the 7311 ending inventory. The revaluation of the beginning inventory 7311 was made by adding an amount to include an allocation for direct labor and factory overhead. Petitioner's reduction of inventory taken at 33⅓ percent was also disallowed. The corrected value of the opening inventory for 7311 is

---

[5]The figure actually shown on the tax return for closing inventory for 7511 was $296,830, but the parties in par. and 23 of their stipulation listed this figure as $296,880.

$723,651, for a total adjustment of $287,060 ($723,651 – $436,591 reported on tax return) to opening inventory for 7311.

Petitioner has stipulated that respondent's revaluations of ending inventory for taxable years ending November 30, 1973, November 30, 1974, and November 30, 1975, are correct. Because of this stipulation, the resulting adjustments to taxable income for taxable years ending November 30, 1974, and November 30, 1975, have been resolved. The only issue now remaining involves the treatment of opening inventory for the taxable year ending November 30, 1973, and the adjustments, if any, to petitioner's taxable income for that year as a result of that treatment.

## ULTIMATE FINDINGS OF FACT

(1) Petitioner did not value its inventory at the lower of cost or market.

(2) Petitioner's method of valuing inventory did not clearly reflect its income.

(3) Respondent's revaluations of petitioner's inventory clearly reflected petitioner's income.

(4) Respondent's revaluations of petitioner's inventory constituted a change in petitioner's method of accounting.

(5) An omission of taxable income in the amount of $287,060 resulted from the revaluation of both opening and closing inventory for the taxable year ending November 30, 1973.

## OPINION

Petitioner is in the business of manufacturing and selling men's pants and is therefore required to use inventories for Federal tax purposes. Petitioner generally uses the accrual method of accounting and describes its method of valuing inventory as the lower of cost or market. In the statutory notice, respondent revalued petitioner's closing inventory for the taxable year ending November 30, 1973 (1973), and both opening and closing inventory for the taxable years ending November 30, 1974 (1974), and November 30, 1975 (1975). Petitioner now agrees that all of these revaluations are correct.

The statutory notice made no adjustment to opening inventory for 1973, for the reason that petitioner was unable, during

the audit, to locate its records and documents necessary for respondent to revalue the opening inventory. Before the trial, however, petitioner located its records and documents, and opening inventory for 1973 can now be valued in a manner consistent with the revaluation made to petitioner's closing inventory for that year. In fact, the parties are in agreement as to the correct figure for opening inventory for 1973. Unfortunately, that does not end our inquiry.

Petitioner contends that the primary issue remaining for the Court to decide is whether respondent should have revalued petitioner's opening inventory for 1973 in a manner consistent with the revaluation of its closing inventory for that year. Respondent's position is that the revaluation of petitioner's inventory is a change in petitioner's method of accounting that requires (1) the revaluation of petitioner's opening inventory and (2) an adjustment pursuant to section 481 to prevent the omission of amounts from taxable income.[6]

Petitioner asks the Court to revalue its opening inventory, but petitioner insists that there has not been a change in its accounting method. Petitioner characterizes the various adjustments to inventory as the mere correction of its application of its lower of cost or market method of valuing inventory. If the opening inventory for 1973 is revalued as petitioner requests, but without the section 481 adjustments, petitioner will receive a windfall. In that event, petitioner's taxable income from sales for 1973 will be reduced by some $59,000 rather than increased by almost $228,000 as determined in the statutory notice, with the result that some $287,000 of taxable income will escape taxation.

In addition to arguing that there has been no change in its accounting method (and therefore no adjustments under sec. 481), petitioner says that whether or not there has been a change in its accounting method is a "new matter" raised by respondent as to which respondent bears and has failed to sustain the burden of proof.

---

[6]All section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years involved in this case, unless otherwise stated.

## Burden of Proof

Generally, the burden of proof is on the taxpayer. *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Rule 142(a) provides:

The burden of proof shall be upon petitioner, except as otherwise provided by statute or determined by the Court; and except that, *in respect of any new matter*, increases in deficiency, and affirmative defenses, pleaded in his answer, it shall be upon respondent. * * * [Emphasis added.]

Petitioner argues that respondent has introduced "new matter" in regard to whether or not there has been a change of accounting method, and therefore has the burden of proof on that issue. At the trial, petitioner specifically disclaimed any element of surprise, and the trial went forward. However, both parties have devoted much of their post-trial briefs to burden of proof arguments.

In support of its "new matter" contention, petitioner relies upon paragraph 5(b)(i) of its petition and respondent's answer thereto. Paragraph 5(b)(i) of the petition states: "The Notice of Deficiency (Exhibit A) seeks to have Petitioner change its method of accounting." Paragraph 5 of respondent's answer states: "Denies the allegations of subparagraphs (a), (b)-(i) to (v), inclusive." Petitioner characterizes its pleading as if it read that "*Respondent* has changed petitioner's method of accounting." Petitioner says respondent's denial therefore meant that respondent was in effect conceding that he had *not* changed petitioner's method of accounting. Respondent characterizes that pleading as if it read "*Petitioner* has changed its method of accounting." Thus, respondent says that the denial in his answer was proper because it was not petitioner who initiated the change in accounting method, but respondent. For purposes of the section 481 adjustment, the question of who initiated the change in method of accounting can be important. Here, any change in method of accounting was initiated by respondent, not petitioner.

The pleadings in this case are not models of clarity. The petition as a whole constitutes somewhat scant notice pleading, and respondent's answer is nothing more than a general denial. However, the petition challenged each and every adjustment in the statutory notice for each year, and respondent denied each and every allegation. In regard to the

inventory adjustments, the statutory notice of deficiency stated that:

You used an estimated market value for valuing inventories instead of using a cost accounting method of valuing inventories. You also had unsubstantiated inventory write-downs in all 3 years and you had omissions of items in the ending inventory for the taxable year ended November 30, 1975.

Petitioner put in issue each adjustment to inventory for all years, asserting that the inventory figures on its tax returns were correct. For the year 1973, petitioner alleged that respondent's increase to ending inventory was incorrect, but asserted alternatively that if that increase was correct, then respondent erred in failing to recalculate the value of opening inventory. Petitioner alleged that the correct figure for opening inventory was a figure different from that stated in its tax return and different from the figure the parties now agree upon. It was in the context of this alternative argument that petitioner's allegation in paragraph 5(b)(i) appeared.

The Court cannot read petitioner's rather ambiguous allegation and respondent's denial thereof as a concession that there was no change in accounting method. Petitioner argues that the pleadings somehow removed from the case the whole question of a change in accounting method. We disagree. That issue pervades this whole matter of the inventory revaluations. The statutory notice and the pleadings are sufficient to raise the issue of change of accounting method. See *Considine v. Commissioner*, 74 T.C. 955 (1980); *Estate of Horvath v. Commissioner*, 59 T.C. 551, 555–556 (1973); *Barbourville Buick Co. v. Commissioner*, 37 T.C. 7, 14 (1961); *Sorin v. Commissioner*, 29 T.C. 959 (1958), affd. 271 F.2d 741 (2d Cir. 1959). We are not persuaded that change of accounting method is "new matter," and therefore the burden of proof in that regard remains with petitioner.

### *Respondent's Revaluation of Petitioner's Inventory*

Since petitioner has conceded respondent's adjustments to inventory for taxable years ending November 30, 1974, and November 30, 1975, we need only decide the effect of the adjustments respondent has made to inventory for the taxable year ending November 30, 1973. However, respondent actually revalued inventory for all 3 years, and we must consider the

same general legal principles whether we are talking about 1 year or all 3 years.

Generally speaking, under section 446(a), taxable income must be computed "under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." If no method of accounting has been regularly used or if the taxpayer's regular method of accounting does not clearly reflect income, then section 446(b) becomes operative. Section 446(b) authorizes the Commissioner to compute income under such method as in his opinion "does clearly reflect income." Thus, the initial question is whether petitioner's method of accounting clearly reflected income.

In addition to the clear reflection of income requirements of section 446, inventory accounting for Federal tax purposes is governed by section 471[7] and the regulations promulgated thereunder. As a manufacturer and seller of merchandise, petitioner was required to use inventories and to use the accrual method of accounting for purchases and sales as its overall method of accounting. Secs. 1.446–1(c)(2), 1.471–1, Income Tax Regs. Petitioner complied with those general requirements. Petitioner failed to comply with certain other requirements.

Section 471 and section 1.471–2(a), Income Tax Regs., provide two broad tests which a method of inventory valuation must satisfy. The method of valuation "must conform as nearly as may be to the best accounting practice in the trade or business," and it must "clearly reflect the income." Sec. 1.471–2(a), Income Tax Regs. Petitioner purportedly used the lower of cost or market method in valuing its inventory as permitted by section 1.471–2(c), Income Tax Regs. When we view the facts of this case against the applicable legal principles, we must conclude that petitioner did not properly use the lower of cost or market method of valuing its inventory and that petitioner's method of valuation did not clearly reflect income.

---

[7]SEC. 471. GENERAL RULE FOR INVENTORIES.

Whenever in the opinion of the Secretary or his delegate the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer on such basis as the Secretary or his delegate may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

When inventory is valued on the basis of cost or market, whichever is lower, the "market value of each article on hand at the inventory date shall be compared with the cost of the article, and the lower of such values shall be taken as the inventory value of the article." Sec. 1.471–4(c), Income Tax Regs. Market for this purpose is defined as the "current bid price prevailing at the date of the inventory." Sec. 1.471–4(a), Income Tax Regs. As the Supreme Court has pointed out, "bid price" in this regulation means "replacement cost," the price the taxpayer would pay on the open market to purchase or reproduce the inventory items. *Thor Power Tool Co. v. Commissioner*, 439 U.S. 522, 534 (1979). If no open market exists, the taxpayer must use such other evidence of a fair market price at the date nearest the inventory as may be available. Sec. 1.471–4(b), Income Tax Regs. If the taxpayer has offered for sale inventory goods at prices lower than the current bid prices, the inventory may be valued at these lower offering prices. Sec. 1.471–4(b), Income Tax Regs.

The above regulations were interpreted by the Supreme Court in *Thor Power Tool Co. v. Commissioner, supra.* The Supreme Court, at page 535, said:

From this language, the regulatory scheme is clear. The taxpayer must value inventory for tax purposes at cost unless the "market" is lower. "Market" is defined as "replacement cost," and the taxpayer is permitted to depart from replacement cost only in specified situations. When it makes any such departure, the taxpayer must substantiate its lower inventory valuation by providing evidence of actual offerings, actual sales, or actual contract cancellations. In the absence of objective evidence of this kind, a taxpayer's assertions as to the "market value" of its inventory are not cognizable in computing its income tax.

In *Thor Power*, the Commissioner had disallowed the taxpayer's writedowns of inventory where the writedowns were inconsistent with these regulations, and unrelated to any market evidence. Here, too, there is no evidence that petitioner's inventory valuations, particularly its percentage writedowns, were based on replacement costs or any other evidence of market value. Petitioner's inventory valuations also failed to meet the requirements for valuations at cost.

In valuing inventory at cost, purchased merchandise must be valued at invoice prices less certain trade or other discounts. Sec. 1.471–3(b), Income Tax Regs. Again petitioner's percentage writedowns did not constitute proper adjustments

to the purchased items in its inventory. In inventory valuations at cost, merchandise manufactured or produced by the taxpayer (here finished pants and work in process) must be valued not only for material costs but also direct labor and indirect production costs. Secs. 1.471–3(c), 1.471–11, Income Tax Regs. Section 1.471–11, Income Tax Regs., spells out specific rules for inventories of manufacturers and requires direct and indirect production costs to be taken into account in accordance with the "full absorption" method of inventory costing.[8] Petitioner simply valued its finished pants at 50 percent of its sales prices to its customers. Petitioner valued its work in process at materials cost only (without labor and factory overhead), which amount was then reduced by its percentage writedowns.

In summary, petitioner did not compute either market or cost in the manner required by the regulations. Petitioner's writedowns of its inventory were not based on bid prices, actual sales, or any other evidence of market value. Furthermore, petitioner's failure to allocate a factor for direct labor and factory overhead was an incorrect valuation of inventory at cost.

Based on the facts in this case, we conclude that petitioner did not use the lower of cost or market method of valuing its inventory in the manner required by the regulations. We are also satisfied that petitioner's method did not clearly reflect income. It is well established that section 446(b) and section 471 vest the Commissioner with broad authority in these matters of inventory accounting and wide latitude to recom-

---

[8]Sec. 1.471–11(a), Income Tax Regs:

Sec. 1.471–11. Inventories of manufacturers.

(a) *Use of full absorption method of inventory costing.* In order to conform as nearly as may be possible to the best accounting practices and to clearly reflect income (as required by section 471 of the Code), both direct and indirect production costs must be taken into account in the computation of inventoriable costs in accordance with the "full absorption" method of inventory costing. Under the full absorption method of inventory costing production costs must be allocated to goods produced during the taxable year, whether sold during the taxable year or in inventory at the close of the taxable year determined in accordance with the taxpayer's method of identifying goods in inventory. Thus, the taxpayer must include as inventoriable costs all direct production costs and, to the extent provided by paragraphs (c) and (d) of this section, all indirect production costs. For purposes of this section, the term "financial reports" means financial reports (including consolidated financial statements) to shareholders, partners, beneficiaries or other proprietors and for credit purposes.

pute income so as to clearly reflect income. *Thor Power Tool Co. v. Commissioner, supra* at 532; *United States v. Catto*, 384 U.S. 102, 113–114 (1966); *Lucas v. Structural Steel Co.*, 281 U.S. 264, 271 (1930). We therefore hold that respondent did not abuse his discretion under section 446(b) and section 471 by revaluing petitioner's inventory.

## Change in Accounting Method

The next question is whether respondent's revaluations of inventory constituted a change in petitioner's method of accounting. If there has been a change in method of accounting, then section 481 comes into operation and adjustments necessary to prevent an omission of taxable income must be made.

Respondent's revaluation of petitioner's inventory was essentially in two areas. First, respondent disallowed the percentage writedowns that petitioner had taken. Secondly, respondent added a factor for direct labor and factory overhead to the inventory manufactured by petitioner.

Petitioner apparently concedes, as it must, that there has been a change in accounting method in regard to its treatment of finished pants and work in process, i.e., placing those items on a full absorption method of inventory costing. Petitioner stresses that respondent applied the full absorption method only to finished pants and work in process. Those are, however, the only items to which labor and factory overhead apply. Labor and overhead apply only to manufactured items, not to purchased items of inventory. Sec. 1.471–11, Income Tax Regs.

In *Dearborn Gage Co. v. Commissioner*, 48 T.C. 190 (1967), we held that placing a taxpayer on the full absorption method of cost accounting was a change in accounting method. Moreover, section 1.446–1(e)(2)(iii), example (6), Income Tax Regs., specifically provides:

*Example (6).* A taxpayer in the manufacturing business has for many taxable years valued its inventories at cost. However, cost has been improperly computed since no overhead costs have been included in valuing the inventories at cost. The failure to allocate an appropriate portion of overhead to the value of inventories is contrary to the requirement of the Internal Revenue Code and the regulations thereunder. A change requiring appropriate allocation of overhead is a change in method of accounting

because it involves a change in the treatment of a material item used in the overall practice of identifying or valuing items in inventory.

Thus, there has been a change in petitioner's method of accounting with respect to petitioner's treatment of finished pants and work in process. Therefore, any omission of income caused solely by this change requires an adjustment under section 481.

The greater portion of respondent's revaluations arose from the disallowance of the percentage writedowns. Petitioner and respondent vehemently dispute whether these adjustments are changes in petitioner's method of accounting which would result in a section 481 adjustment.

Under the pertinent statutory provisions and regulations, section 481 applies to two different kinds of change in accounting method. It applies to a change in overall method of accounting for gross income and deductions. Section 481 also applies to a change in treatment of "a material item."

Section 1.481–1(a)(1), Income Tax Regs., defines a change in accounting method to which section 481 applies as including "a change in the overall method of accounting for gross income or deductions, or a change in the treatment of a material item." That section of the regulations also incorporates the rules of section 446(e) and section 1.446–1(e), Income Tax Regs., for determining when a change in method of accounting has occurred. The regulations under section 446 also provide that a change in method of accounting includes a change in the treatment of any material item, as well as a change in the overall plan of accounting. Sec. 1.446–1(e)(2)(ii)(a), Income Tax Regs. A change in method of accounting does not include correction of mathematical or posting errors or errors in the computation of tax liability. Sec. 1.446–1(e)(2)(ii)(b), Income Tax Regs.

Furthermore, with respect to inventories specifically, the regulations cover both types of changes in method of accounting (overall change and item change) and expressly provide that such changes include methods of valuing inventories. Section 1.446–1(e)(2)(ii)(a), Income Tax Regs., provides in pertinent part that "Changes in method of accounting include * * * a change involving the method or basis used in the valuation of inventories." Section 1.446–1(e)(2)(ii)(c), Income Tax Regs., provides that:

(c) A change in an overall plan or system of identifying or valuing items in inventory is a change in method of accounting. Also a change in the treatment of any material item used in the overall plan for identifying or valuing items in inventory is a change in method of accounting.

Petitioner and respondent disagree as to whether the adjustments to petitioner's inventory are "a change in the treatment of any material item" used in the overall plan for valuing inventory. The answer turns on whether the items affect timing. Section 1.446–1(e)(2)(ii)(a), Income Tax Regs., provides that "A material item is any item which involves the proper time for the inclusion of the item in income or the taking of a deduction." Conversely, section 1.446–1(e)(2)(ii)(b), Income Tax Regs., provides that a change in method of accounting does not include adjustment of any item of income or deduction "which does not involve the proper time for the inclusion of the item of income or the taking of a deduction."

Petitioner argues that its writedowns of inventory have nothing to do with proper timing and were not deductible in any period. Petitioner relies upon cases such as *W. A. Holt Co. v. Commissioner*, 368 F.2d 311 (5th Cir. 1966), and *Schuster's Express, Inc. v. Commissioner*, 66 T.C. 588 (1966), affd. 562 F.2d 39 (2d Cir. 1977).

In *W. A. Holt Co.*, the taxpayer charged off as bad debts certain accounts that were not in fact worthless. This practice of charging off accounts that were not in fact worthless when charged off was held not to be a method of accounting but to be "nothing more than a method of distorting income in favor of the taxpayer." 368 F.2d at 312. Petitioner now argues that its writedowns were never deductible in any period, distorted its income, and did not constitute a method of accounting at all. While we agree that petitioner's method here distorted income in its favor, we do not agree that its method was not a method of accounting that was changed by respondent.

Petitioner also relies heavily on *Schuster's Express, Inc. v. Commissioner, supra,* to support its argument that there has been no change in its method of accounting. The taxpayer in *Schuster's Express* was a common carrier that acted as a self-insurer for a portion of its operations. The taxpayer maintained insurance expense accounts on the basis of a predetermined percentage of gross income. These estimates were used in computing the insurance expense deductions. The amount

of the expenses which exceeded the amount of cash expenditures was placed in a reserve account. Respondent disallowed the deductions claimed to the extent they exceeded actual expenditures and argued that the balance of the reserve account must be included in income under section 481. We held that no section 481 adjustment was permissible because there had been no change of accounting method. We held that the deductions claimed for insurance expenses in excess of the actual expenditures were not properly deductible in any period, did not relate to the proper timing of the deduction, and, therefore, the adjustment was not a change in method of accounting under section 1.446–1(e)(2)(ii)(*b*), Income Tax Regs.

We reached that result in *Schuster's Express* because that taxpayer's practice would never properly reflect the taxpayer's total lifetime income. The inquiry there, as here, was whether the accounting practices permanently avoided the reporting of income over the taxpayer's lifetime income or merely postponed the reporting of income. *Graff Chevrolet Co. v. Campbell*, 343 F.2d 568, 572 (5th Cir. 1965). Because we are here dealing with inventory, where one year's closing inventory becomes the next year's opening inventory, we are satisfied that the present case involves only postponement of income and therefore involves a timing question.

The consistent undervaluation of ending inventory acts to defer income. Section 1.61–3(a), Income Tax Regs., provides that "In a manufacturing, merchandising, or mining business, 'gross income' means the total sales, less the cost of goods sold." Petitioner, as a manufacturer of men's pants, computes its income from sales by subtracting cost of goods sold from gross sales. The cost of goods sold is determined by adding to opening inventory for the year the purchases (cost of goods acquired during that year) and subtracting from that sum the closing inventory (goods still on hand at the end of that year). Thus, any undervaluation of ending inventory for a taxable year increases the cost of goods sold, decreases the income from sales, and results in a lower profit for that year. Since each year's closing inventory becomes the opening inventory for the succeeding year, the system will automatically self-correct whenever the closing inventory is correctly valued. The cumulative income over the period of years involved will be the same total, but income will be deferred each year until

the closing inventory is finally corrected. The following table, for just a 2-year period, will show that there is a deferral of income from year 1 to year 2, that the system automatically self-corrects in the second year when ending inventory is correctly valued, but that total income for both 2-year periods is the same: [9]

|  | Case A Inventory correctly stated | | Case B Inventory understated | |
| --- | --- | --- | --- | --- |
|  | Year 1 | Year 2 | Year 1 | Year 2 |
| 1. Opening inventory | 400 | 400 | 400 | 350 |
| 2. Plus: Purchases during year | 400 | 400 | 400 | 400 |
| 3. Equals: Goods available for sale | 800 | 800 | 800 | 750 |
| 4. Less: Closing inventory | 400 | 400 | 350 | 400 |
| 5. Equals: Cost of goods sold | 400 | 400 | 450 | 350 |
| 6. Sales | 600 | 600 | 600 | 600 |
| 7. Less: Cost of goods sold (line 5) | 400 | 400 | 450 | 350 |
| 8. Equals: Gross income from sales | 200 | 200 | 150 | 250 |

Thus, we conclude that petitioner's erroneous writedowns of its inventory do involve timing questions: the proper time for taking a deduction (indirectly through cost of goods sold) and for reporting income (income from sales). Petitioner seemed to recognize at the trial that a question of timing was involved.[10] Respondent's revaluations of petitioner's inventory constitute changes in the treatment of a material item and hence a change in accounting method. Our conclusion in this case is also supported by one of the specific examples of a change of

---

[9]See J. Freeland, S. Lind & R. Stephens, Fundamentals of Federal Income Taxation 580–583 (2d ed. 1977). Examples from 4 B. Bittker, Federal Taxation of Income, Estates and Gifts, par. 105.4.5 (1981), illustrate how an undervaluation of inventory is self-correcting when the ending inventory is correctly valued after 2 years, as in the table in the text, and after 5 years.

[10]Over objections by respondent's counsel, petitioner's counsel questioned the examining revenue agent as to whether petitioner's practices of valuing inventory would permanently distort its income or only temporarily distort it. The Court overruled respondent's objection and the following colloquy occurred:

THE WITNESS: All right. It would distort income, year-to-year. The Code, the regulations, all require an annual accounting, and that's what inventories and everything is all about. That's what cutoff is all about.

BY MR. KAISER: (resuming)

Q. Would this be a permanent distortion or a temporary distortion?

A. Temporary, of course. Eventually, with the termination of the company, it would be caught up, certainly.

MR. KAISER: I have no further questions at this time, Your Honor.

accounting method in valuing inventories set out in the regulations. Sec. 1.446–1(e)(2)(iii), example (7), Income Tax Regs., provides as follows:

(iii) A change in the method of accounting may be illustrated by the following examples:

\*     \*     \*     \*     \*     \*     \*

*Example (7).* A taxpayer has for many taxable years valued certain inventories by a method which provides for deducting 20 percent of the cost of the inventory items in determining the final inventory valuation. The 20 percent adjustment is taken as a "reserve for price changes." Although this method is not a proper method of valuing inventories under the Internal Revenue Code or the regulations thereunder, it involves the treatment of a material item used in the overall practice of valuing inventory. A change in such practice or procedure is a change of method of accounting for inventories.

In conclusion, we hold that respondent's revaluations of petitioner's inventory, with respect to both including a factor for direct labor and factory overhead and disallowing petitioner's writedowns of inventory, constitute changes in petitioner's method of accounting. *Dearborn Gage Co. v. Commissioner, supra*; secs. 1.446–1(e)(2)(ii)(*c*) and 1.446–1(e)(2)(iii), examples (6) and (7), Income Tax Regs.

## *Revaluation of Opening Inventory for 1973*

Having found that there has been a change in petitioner's accounting method, we conclude that the opening inventory for 1973 must also be revalued in order to clearly reflect petitioner's income for that year. It is well settled that a change of accounting method by respondent with respect to inventory requires that opening inventory be computed on the same basis as closing inventory. *Commissioner v. Dwyer*, 203 F.2d 522 (2d Cir. 1953); *Commissioner v. Schuyler*, 196 F.2d 85 (2d Cir. 1952); *Fruehauf Trailer Co. v. Commissioner*, 42 T.C. 83 (1964), affd. 356 F.2d 975 (6th Cir. 1966), cert. denied 385 U.S. 822 (1966); *Dearborn Gage Co. v. Commissioner, supra.* As we stated the rule in *Fruehauf Trailer Co. v. Commissioner, supra* at 106–107:

even before the enactment of section 481 under a long line of cases \* \* \*, it has been held that where the Commissioner changes a method of accounting by using a different method of valuing inventories at the end of the year he is required, in order clearly to reflect income for that year, to value the opening inventory according to the same method as the closing inventory.

We do not understand that section 481 requires any different result where the change is initiated by the Commissioner. * * *

Thus, the Court will revalue petitioner's opening inventory the same way that closing inventory was revalued. The statutory notice increased closing inventory for 1973 from the $498,880 figure reported on petitioner's tax return to the $726,817 figure that both parties now agree to be correct, for an increase of $227,937. Since the statutory notice did not increase opening inventory for that year, the total increase in taxable income from sales for 1973 was also $227,937. Revaluing opening inventory in the same way as respondent revalued closing inventory, we now increase opening inventory for 1973 by $287,060 (the $723,651 figure both parties agree to be correct minus the $436,591 figure reported as opening inventory on petitioner's tax return). That, in turn, means income from sales will be reduced by $59,123 rather than increased by the $227,937 shown on the statutory notice. In the absence of any adjustment under section 481, an amount of $287,060 of taxable income will escape taxation as a result of the understatements of inventory in prior years.

## Section 481 Adjustment

Since we have found that respondent changed petitioner's method of accounting in regard to inventories, we have adjusted the opening inventory for 1973 as petitioner requested. However, that change of accounting method triggers the adjustments of section 481. If any amounts are omitted from taxable income because of a change in method of accounting, then section 481 mandates adjustments to prevent these omissions. Section 481(a) provides that:

SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING.

(a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to

which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

In this case, the change in petitioner's accounting method for valuing inventory did result in amounts being omitted from taxable income. The credit petitioner received for opening inventory for 1973 after the revaluation was $287,060 greater than the charge to petitioner as ending inventory for 1972. This disparity creates a windfall to petitioner of the type that section 481 was designed to avert. As the court held in *Graff Chevrolet Co. v. Campbell*, 343 F.2d at 572:

Section 481 is designed to prevent a distortion of taxable income and a windfall to the taxpayer stemming from a change in accounting at a time when the statute of limitations bars reopening the taxpayer's returns for earlier years. It authorizes "necessary" adjustments, "to prevent amounts from being duplicated or omitted," in the "year of change" whether "initiated" by the taxpayer or the Commissioner.

Aside from its argument that there was no change in accounting method, and that there can thus be no section 481 adjustment, and its argument that respondent has the burden of proof in regard to any section 481 adjustments, arguments that we have rejected earlier in this opinion, petitioner also argues about the amount of any adjustment to be made.

Adjustments are of course limited to those adjustments "determined to be necessary solely by reason of the change [in accounting method] in order to prevent amounts from being duplicated or omitted." Sec. 481(a)(2). For the opening inventory for 1973, all adjustments flowed from either application of the full absorption method or the writedowns, both of which we have held to be changes in method of accounting. Thus, on this record, we must conclude that the entire $287,060 attributable to these changes constitutes the proper adjustment under section 481.

There is no factual basis in the record to permit the Court to reduce the amount of the section 481 adjustment. It may be that some part of the section 481 adjustment results from taxable years ending before November 30, 1954, and since it is respondent who initiated the accounting change rather than petitioner, any adjustment in respect of any taxable year before section 481 came into the tax laws with the enactment of the 1954 Code are not to be taken into account under section

481(a)(2). However, if there is any such amount, no evidence of it has been presented to the Court.

To reflect the concessions and the above holdings,

*Decision will be entered under Rule 155.*

