SOUTH SIDE CONTROL SUPPLY CO., INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
South Side Control Supply Co. v. Commissioner
Docket No. 7969-79
United States Tax Court
T.C. Memo 1982-597; 1982 Tax Ct. Memo LEXIS 155; 44 T.C.M. (CCH) 1383; T.C.M. (RIA) 82597; October 7, 1982. *155 Norman Hanfling and Martha Katz (recognized for this case only) for the petitioner. Donald J. Stadfeld and Seymour I. Sherman, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined a deficiency of $217,784 in petitioner's Federal income tax for its taxable year ending July 31, 1973. The sole issue presented here for our decision is whether petitioner properly used a ten-year period following a change in its method of accounting for inventory in which to report prior write-downs taken for slow-moving or overstocked items. This case was submitted fully stipulated, and the facts as presented are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. A summary of the relevant facts is set forth below. South Side Control Supply Co. Inc. (hereinafter referred to as "South Side" or "petitioner") filed its Federal income tax return for the taxable year ended July 31, 1973 with the Internal Revenue Service Center at Kansas City, Missouri. South Side is a corporation organized in 1968 under the laws of the state of Illinois. At the time of the filing of the petition in this case, South Side maintained its *156 principal office and place of business in Chicago, Illinois. Petitioner has at all times pertinent to this proceeding maintained its books and records and filed its Federal income tax returns on an accrual basis of accounting, using a fiscal year ending July 31. During its fiscal year ended July 31, 1973 (the 1973 taxable year), and at all times pertinent prior thereto, petitioner used the first-in, first-out (FIFO) system for identifying units sold and valued its inventory on the basis of cost. Petitioner wrote down inventory values to account for slow-moving or overstocked items (excess stock). As of the close of business on July 31, 1973, such write-downs totalled $453,717. No write-downs to market values were made, and no comparisons of cost to market were made, for the purpose of determining inventory values. None of the excess stock items referred to above were sold or offered for sale at prices less than actual cost at any time pertinent hereto. On or about September 21, 1973, petitioner filed Form 3115, Application for Change in Accounting Method, seeking permission to change its method of inventory valuation from cost to the lower of cost or market, while retaining *157 the FIFO system of identifying units sold. Under this new method, no write-downs for excess stock would be made. Permission was granted to value the inventory at cost or market, whichever is lower, in accordance with section 1.471-4, Income Tax Regs., commencing with the fiscal year ended July 31, 1974, [1] (the 1974 taxable year or sometimes referred to as the "year of change"). The Commissioner required that an adjustment of $453,717 be made in accordance with section 481(a). [2] *158 This adjustment was to be taken into account over a ten-year period beginning with the 1974 taxable year. [3] On or about April 14, 1975, petitioner filed (with its 1974 return) Form 970, Application to Use LIFO Inventory Method, beginning with its taxable year ending July 31, 1974, the same year for which the change to lowr of cost or market (still under FIFO) was to have taken effect. The request lists as the inventory method currently being used: "Lower of cost (FIFO) or market." South Side filed its corporate Federal income tax *159 return for its 1974 taxable year (ended July 31, 1974) using the last-in, first-out (LIFO) method of identifying units of inventory. Valuation of both opening and closing inventory was made on the basis of actual cost. Closing inventory as shown on the 1973 return (fiscal year ended July 31, 1973) was $150,400. The method of valuation used was cost. Opening inventory shown on the 1974 return is given as $604,117. The difference between these figures, $453,717, is solely attributable to inventory write-downs to account for slow moving and overstocked items. [4] At *160 all times since August 1, 1974, the taxpayer's inventory has been stated at actual cost unreduced by write-downs of any sort. During this period cost has, at all times, been equal to or less than market value. Apparently as a result of a subsequent audit, the District Director of Internal Revenue in Chicago, Illinois requested and obtained technical advice from the National Office of the Internal Revenue Service to assist in responding to the petitioner's situation. The following decision was reached (June 27, 1977): (1) Section 481(a) and section 472(d) of the Code are mutually exclusive, and an adjustment required by section 472(d) must be made solely in accordance with such section. (2) South Side cannot report a portion of its section 481(a) adjustment in lieu of amending its tax return pursuant to section 472(d) of the Code and section 1.472-2(c). If South Side wishes to elect the LIFO method for the taxable year ended July 31, 1974 its inventory must be valued at cost as at July 31, 1973 for purposes of compliance with section 472(d) and Rev. Proc. 76-6. The use in the instant case of Rev. Proc. 70-27 *161 in order to attain cost for purposes of the LIFO election is prohibited.
In his notice of deficiency, respondent disallowed $453,717 of the $1,419,687 cost of goods sold claimed on the 1973 return. The reason stated for the adjustment was to take into account the change in method of valuing inventories under section 472(d). Since ending inventory was determined to be $604,117, an adjustment to taxable income was made in the amount of the difference between this figure and the amount shown as ending inventory on the return ($150,400), or $453,717. By way of amended answer, respondent further alleged that the write-down to account for excess stock was itself impermissible, relying on Thor Power Tool Co. v. Commissioner,439 U.S. 522 (1979). Generally, a taxpayer who changes his method of accounting must secure the consent of the Secretary prior to computing his taxable income under the new method. Section 446(e). In order to secure the Secretary's consent, the taxpayer must file an application on Form 3115 within 180 days after the beginning of the taxable year in which it is desired to make the change. Permission to change will not be granted unless the taxpayer and the Commissioner *162 agree to the terms, conditions, and adjustments under which the change will be effected. Section 1.446-1(e)(3)(i), Income Tax Regs. The Commissioner may prescribe administrative procedures, subject to such limitations, terms, and conditions as he deems necessary to prevent the omission or duplication of items includable in gross income or deductions, to permit taxpayers to change their accounting practices to an acceptable treatment consistent with the regulations as a precondition to granting his assent. Section 1.446-1(e)(3)(ii), Income Tax Regs.
South Side fully complied with these procedures when on September 21, 1973 it timely filed a Form 3115 seeking permission to change its method of inventory valuation from FIFO cost to FIFO lower of cost or market commencing with the 1974 taxable year. As a condition to approving the change petitioner was required to restore to income all prior write-downs taken on account of excess stock in accordance with section 481(a). However, the respondent specified that the adjustment could be taken into income over a ten-year period beginning with the 1974 taxable year in accordance with provisions of Rev. Proc. 70-27, 1970-2 C.B. 509. [5] *163 *164 After the close of the 1974 taxable year, South Side filed an application to use LIFO instead of FIFO for that year and succeeding years. South Side computed its taxable income for 1974 using LIFO, as the advance consent of the Commissioner is *165 not needed in order to adopt the LIFO method. Section 1.472-3(a), Income Tax Regs.; John Wanamaker Philadelphia, Inc. v. United States,175 Ct. Cl. 169, 359 F.2d 437, 440 (1966). A LIFO election is subject, however, to the requirement that the change to, and the use of, LIFO "shall be in accordance with such regulations as the Secretary may prescribe as necessary in order that the use of such method may clearly reflect income." Section 472(a). A taxpayer who utilizes the LIFO method must value his inventory at cost. Section 472(b)(2). In order, therefore, for opening inventory for the year of election to be stated at cost, section 472(d) requires that in determining income for the taxable year preceding the year of transition closing inventory must be stated at cost. [6] In addition to conforming the opening inventory for the year of the LIFO election to cost, this requirement achieves the dual purpose of causing prior write-downs to be taken into income thereby avoiding the possibility of allowing a double deduction. It is important to note that this adjustment to cost is required by the Code regardless of whether any deviation from cost in the prior years was due to the use of *166 a proper or an improper method of valuing the inventories. Throughout most of the history of this controversy, respondent based his position squarely on section 472(d). South Side has consistently argued that no adjustment was required pursuant to section 472(d) since it at all times prior to its election to use LIFO it in fact valued its inventories at cost. Section 1.471-2(c) deals with valuation of inventories: (c) The bases of valuation most commonly used by business concerns and which meet the requirements of section 471 are (1) cost and (2) cost or market, *167 whichever is lower. * * * Any goods in an inventory which are unsalable at normal prices or unusable in the normal way because of damage, imperfections, shop wear, changes of style, odd or broken lots, or other similar causes, including second-hand goods taken in exchange, should be valued at bona fide selling prices less direct cost of disposition, whether subparagraph (1) or (2) of this paragraph is used, or if such goods consist of raw materials or partly finished goods held for use or consumption, they shall be valued upon a reasonable basis, taking into consideration the usability and the condition of the goods, but in no case shall such value be less than the scrap value. Bona fide selling price means actual offering of goods during a period ending not later than 30 days after inventory date. The burden of proof will rest upon the taxpayer to show that such exceptional goods as are valued upon such selling basis come within the classifications indicated above, and he shall maintain such records of the disposition of the goods as will enable a verification of the inventory to be made. Details regarding the use of the lower of cost or market method of valuation are set forth *168 in section 1.471-4, Income Tax Regs.
Petitioner wrote down its inventory values by $453,717 below cost to account for excess stock during the same period. Petitioner attempted to convince respondent that in spite of these adjustments its inventory was still valued at cost, since the regulations allow such write-downs for all methods of valuing inventory, and therefore "cost" by definition presupposes the allowance of such write-downs. [7] Respondent was unpersuaded that cost as that term is used in section 472 means anything other than the actual cost of acquiring the particular items of inventory. The regulations embrace this view as they provide that "[t]he actual cost of the aggregate shall be determined pursuant to the inventory method employed by the taxpayer under the regulations applicable to the prior taxable year with the exception that restoration shall *169 be made with respect to any write-down to market values resulting from the pricing of former inventories." Section 1.472-2(c), Income Tax Regs.
Respondent's position on this controversy was made clear in a series of revenue rulings issued in 1976. In Rev. Rul. 76-282, 1976-2 C.B. 137, respondent ruled that the adjustment required under section 472(d) of the Code must include any write-down from actual cost taken with respect to goods that are unsalable at normal prices or unusable in the normal way ("subnormal goods" within the meaning of section 1.471-2(c), Income Tax Regs.), as well as normal goods written down to market under section 1.471-4, Income Tax Regs.Rev. Proc. 76-28, 1976-2 C.B. 645, was promulgated to implement Rev. Rul. 76-282. Excess stock write-downs are treated as "subnormal goods" write-downs under section 1.471-2, Income Tax Regs., for purposes of applying this revenue procedure. Section 4.02, Rev. Proc. 76-28, 1976-2 C.B. 645, 646; Int. Rev. News Release IR-1655 (Announcement 76-115), Aug. 9, 1976. However, both the revenue ruling and the revenue procedure except from their application goods disposed of prior to 60 days after July 26, 1976 whose carrying value *170 had been determined by reference to section 1.471-2(c), Income Tax Regs. The exception is applicable to "a taxpayer that has a LIFO election in effect for a taxable year(s) prior to * * * 60 days from July 26, 1976." Petitioner argues both in its petition and on brief that it comes within the ambit of these exceptions and is therefore exempted by public rulings of the respondent from having to make adjustments for its excess stock write-downs. Nevertheless, we need not resolve the difficult issue of what Congress meant by the term cost when it adopted section 472 because at the trial, after nearly half a decade of insisting that South Side had failed to comply with the requirements of section 472(d), respondent simply walked away from this theory. Accordingly on brief, respondent clearly and unequivocably states that "[r]espondent no longer relies upon the change to LIFO in support of the determination in this case." Based upon respondent's concession, we must find that section 472(d) does not require the accumulated excess stock write-down to be included in South Side's income for its 1973 taxable year. [8] *171 This would seem to be the end of the case. Petitioner filed a Form 3115 electing to switch to FIFO lower of cost or market. Respondent allowed the change along with ten-year averaging of the resulting adjustment under the provisions of Rev. Proc. 70-27. South Side then switched to LIFO, and but for the fact that respondent argued that section 472(d) contemplates inclusion of the adjustment in a single taxable year, the taxpayer could have continued on with his ten-year spread. Since respondent has now dropped section 472(d) as a basis for his determination, the ten-year averaging provisions of Rev. Proc. 70-27 should remain available to the taxpayer. Unfortunately, things are not that simple. For in addition to abandoning his section 472(d) argument at trial, respondent at that time amended his answer to rely solely on the Supreme Court decision in Thor Power Tool Co. v. Commissioner,439 U.S. 522 (1979), affg. 563 F.2d 861 (7th Cir. 1977), *172 affg. 64 T.C. 154 (1975), to sustain his determination. We have no trouble agreeing with respondent that the actions taken by South Side in writing down its excess stock are improper under the Supreme Court's holding in Thor. Indeed, petitioner seems to concede that his method of valuing inventory prior to 1974 was declared erroneous by Thor.
Although the parties seem to agree that the excess stock write-downs prior to the 1974 taxable year must be restored to income, they part company over how this is to be accomplished. Respondent still contends that the entire adjustment must be taken into income for the 1973 taxable year, although no longer arguing that this is so by virtue of section 472(d). Petitioner counters that in the absence of the application of section 472(d), no justification exists for rescinding the permission granted to South Side pursuant to Rev. Proc. 70-27, supra, to spread the income over a ten-year period beginning with its 1974 taxable year. [9] *173 The restatement by South Side of its opening inventory for 1974 to actual cost, restoring excess stock write-downs taken under section 1.471-2(c), Income Tax Regs., *174 was a voluntary change of accounting method initiated by the taxpayer. [10] Petitioner filed a Form 3115 seeking to change its method of inventory valuation from cost to lower of cost or market. On this application South Side fully disclosed that it had been taking write-downs from actual cost. [11] *175 Respondent approved this application, requiring an adjustment of $453,717 (the excess stock write-downs cumulative to 1974) be taken into income over a ten-year period beginning with 1974. This the taxpayer proceeded to do. Ordinarily, a change in a method of accounting from a method of accounting used in the previous taxable year triggers the application of section 481. [12] *176 This section requires adjustments determined to be necessary solely by reason of the change in order to prevent items from being duplicated or omitted. Section 481(a)(2). Such is precisely the situation which we confront. [13] In implementing the operational aspects of section 481(a), respondent recognized that allowing the section 481 adjustment to be spread over a ten-year period would encourage taxpayers to change their accounting practices to comply with the regulations. The ten-year spread was designed to make the change more attractive to taxpayers by smoothing out the income effect and eliminating distortions in taxable income which might otherwise arise as a result of the change due to the operation of section 481(a). [14] To effectuate these purposes, Rev. Proc. 64-16, 1964-1 (Part 1) C.B. 677, and later Rev. Proc. 70-27, 1970-2 C.B. 509, *177 were promulgated, and respondent extended the benefits of those procedures to petitioner. Respondent's second thought about extending this treatment to petitioner, and his only reason for rescinding the permission granted to use this treatment, were based on section 472(d), an argument he has now completely abandoned. Since the parties agree the write-down was improper and must be restored to income (as it was pursuant to the applicable revenue rulings and the restoration schedule agreed upon), it is difficult to see how again calling the write-down improper (under the authority of Thor) changes anything. In this connection, we note that taxpayers abandoning an improper write-down method (switching to the proper or "prescribed method") as a result of Thor were also allowed to take the adjustment into income for a period of up to ten years. See Rev. Proc. 80-5, 1980-1 C.B. 582. [15] Even more to the point, Rev. Proc. 80-5 contains the following statement (section 3.06): This *178 revenue procedure does not apply to a taxpayer that has used a method of accounting for inventory valuation of "excess goods" that is not in accordance with the "prescribed method" and the use of such impermissible method has been raised and is pending as an issue as of February 8, 1980, in connection with the examination of the taxpayer's federal income tax return. In such case, Rev. Proc. 70-27, 1970-2 C.B. 509, clarified by Rev. Proc. 75-18, 1975-1 C.B. 687, and as subsequently modified or superseded, is available. [1980-1 C.B. 582, 584.] [16]
Accordingly, on the somewhat unique facts before us, petitioner employed the appropriate procedures and therefore, Decision will be entered for the petitioner.
Footnotes
1. Respondent's letter required, as a condition to granting the requested change (see sec. 446(e); Rev. Proc. 70-27, 1970-2 C.B. 509), that the taxpayer actually "value its inventories at cost or market, whichever is lower, is accordance with sec. 1.471-4↩ of the regulations, for the year ended July 31, 1974, and for subsequent taxable years." 2. This adjustment was arrived at as follows: Inventory valued at cost or market,
whichever is lower
$532,194
Inventory valued under the present
method
150,400
Adjustment (increase to income)
$381,794
These figures were apparently copied from section D of the Form 3115 filed by petitioners. The stipulation of facts states that the adjustment should be $453,717. No explanation is given for this discrepancy, and we will assume the stipulation to be correct. 3. In the event that during the 10-year period closing inventory for any year was less than two-thirds of the opening inventory for the year of transition, or if South Side were to cease to engage in a trade or business (unless the cessation itself be a sec. 381 transaction), then the unreported balance of the adjustment would be accelerated. Furthermore, the Commissioner required, as a condition of his permission to change, that the taxpayer's books be reconciled at the end of the year of transition and subsequent taxable years to show the accounting method granted by the change.↩
4. Form 970, as filed by South Side, contained the following information in edited form: Taxable years
1973
1974
$150,400
$884,456
Adjustment to cost, effective
at 8/1/73 pursuant to agreement
with IRS
453,717
Total
$604,117
$884,456
Less adjustment to LIFO method of
cost determination
82,735
The corporate return itself, Schedule A, showed: Inventory at beginning of year
$ 604,117 Merchandise bought for manufacture or sale
1,762,138 Other costs (attached schedule)
(45,372)
Total
$2,320,883 Less inventory at end of year
801,721 Cost of goods sold
$1,519,162 The adjustment for other costs is explained as "adjustment in inventory valuation IRS."↩
5. Rev. Proc. 70-27, 1970-2 C.B. 509provides in relevant portion: SEC. 1. PURPOSE. The purpose of this Revenue Procedure is to implement the provisions of section 1.446-1(e) of the Income Tax Regulations which authorize the Commissioner to prescribe administrative procedures for obtaining his consent to requests for changes to accounting practices or methods which are consistent with SEC. 3 SCOPE AND OBJECTIVE. SEC. 3 @SCOPE AND OBJECTIVE. .01 A taxpayer's request to change his accounting practice or method for Federal income tax purposes to an acceptable practice or method consistent with the regulations will ordinarily receive favorable consideration, provided he proposes and agrees as a condition to the change to take the necessary resulting adjustment into account ratably over an appropriate period, prescribed by the Commissioner, generally 10 years. .02 Ordinarily the taxable year for which the change is requested shall be referred to as the "year of transition". The period to be used for allocating the resulting adjustment shall begin with the year of transition. SEC. 4 APPLICATION. .01 A taxpayer wishing to take advantage of this procedure should file Form 3115 (Application for Change in Accounting Method) with the Commissioner of Internal Revenue, Attention T:I:C, 1111 Constitution Avenue, N.W., Washington, D.C. 20224, and request the application of Revenue Procedure 70-27. Form 3115 should be filed within 180 days from the beginning of the taxable year for which the change is requested [year of transition]. In addition to the information required on Form 3115, the taxpayer should state that he proposes to take the adjustment into account over a 10-year period, or other appropriate period. Upon consideration of the application, additional information may be required. .03 If the taxpayer's return is being examined by the Service and there is an issue involving a change in accounting practice or method the taxpayer may request application of this Revenue Procedure. In such a case, this Revenue Procedure will generally be applicable to the most recent taxable year (year of transition) for which a Federal income tax return has been filed.* * *↩
6. Sec. 472(d) provides: (d) Preceding Closing Inventory.--In determining income for the taxable year preceding the taxable year for which the method described in subsection (b) is first used, the closing inventory of such preceding year of the goods specified in the application referred to in subsection (a) shall be at cost.
For taxable years beginning after December 31, 1981, sec. 472(d)↩ has been amended to provide that the write-down restoration must be taken into account ratably over three taxable years beginning with the year LIFO is adopted. Sec. 236 of the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 252.
7. Petitioner's argument presumes that the write-downs taken were proper under the regulations. As will be seen later, this is not so. Consequently, even if cost for purposes of sec. 472 means cost as adjusted pursuant to sec. 1.471-2(a), Income Tax Regs., an adjustment would still be required under sec. 472(d)↩ in this case.
8. Petitioner argues he is covered by the exceptions of the 1976 revenue rulings discussed in the text, and he did have a LIFO election in effect long prior to September 26, 1976. It may be that respondent's last minute concession is a belated recognition of the merits of this argument, although we cannot tell from the record before us.
9. In his notice of deficiency, respondent determined that all excess stock write-downs, prior to the commencement of petitioner's 1974 taxable year were reportable in income for the 1973 taxable year. As detailed above, this determination was originally premised on the authority of sec. 472(d) which requires an adjustment be made to closing inventory, restating it to cost, when determining the income for the taxable year preceding the taxable year for which LIFO is first used. Here the preceding taxable year is 1973, and accordingly the respondent directed his deficiency notice to that year requiring that complete restoration. We are not altogether clear on what basis respondent should be allowed to recapture as taxable income for 1973 cost of sales deductions claimed in years prior to 1974 as a result of all erroneous excess stock write-downs. Some of those earlier years might now be barred by the statute of limitations, and in any event (except for 1973) are not before the Court. See sec. 6501. Finally, as will be discussed later, sec. 481 (and respondent has abandoned any reliance on sec. 472(d)↩) requires the adjustment to be made in the year the method of accounting is changed, here 1974, and therefore no impact would be felt for 1973.
10. Closing inventory on the 1973 return is shown as $150,400. Opening inventory is shown on the 1974 return as $604,117. The difference in this figure, $453,717, is solely attributable to inventory write-downs to account for slow-moving and overstocked items. This revaluation of opening inventory represents a change of accounting method initiated by the taxpayer. Primo Pants Company v. Commissioner,78 T.C. 705, 720-725↩ (1982).
11. Section D of Form 3115 is labeled "Change in Method of Valuing Inventories." Line 2 under that section reads as follows on South Side's application: 2. Indicate method and value of all inventories as at the end of the taxable year preceding the year of change under: (a) Present method See attached letter.. $150,400 Lower of cost (FIFO) (b) New method or market.. $532,194 The value stated under lower of cost or market is higher than the value of the same inventory stated under cost. Since there are no "write-ups" to market, the only possible explanation (beyond error) for this disparity is prior write-downs having been taken from cost.↩
12. Sec. 481(a) provides: SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING. (a) GENERAL RULE.--In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")-- (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer. 13. Sec. 481(a)↩ requires the adjustment be made in computing the taxpayer's taxable income for the year of the change--here 1974, a year not presently before the Court.
14. See section 2 of Rev. Proc. 64-16↩, 1964-1 (Part 1) C.B. 678.
15. See also Bush, Flannery, and Dasburg, "IRS's Tough New Rules Under Thor Power: How They Work; What They Mean; How to Cope," 52 J. Tax'n 194↩ (1980).
16. Paragraph 3.07 of the ruling applies sec. 472(d) in certain circumstances, referring to Rev. Procs. 76-6, 76-28, and 76-282, all discussed earlier in the text of this opinion. However, respondent has completely abandoned any reliance on sec. 472(d) in this proceeding, and this ends the matter even assuming (a point not at all clear) that paragraph 3.07 of Rev. Proc. 80-5↩ is applicable.